# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1858

_____

United States of America,  *
                            *
    Plaintiff-Appellee,  *
                            *  Appeal from the United States
v.                          *  District Court for the
                            *  Southern District of Iowa.
Richard Alan Tulk,          *
                            *
    Defendant-Appellant.  *

_____

Submitted: February 9, 1999
Filed: March 19, 1999

_____

Before MCMILLIAN, LAY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Richard Alan Tulk was convicted after a jury trial of conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846, distributing controlled substances in violation of 21 U.S.C. § 841(a)(1), and money laundering in violation of 18 U.S.C. §§ 1956(g)-(h) and 1957. The district court[1] sentenced him to 330 months. Tulk appeals from the judgment on the basis of prosecutorial misconduct and improper jury instructions. We affirm.

_____

[1]The Honorable Charles R. Wolle, Chief Judge, United States District Court for the District of Southern Iowa.

Evidence at trial indicated that Tulk was involved in a methamphetamine distribution network which also dealt in marijuana and cocaine. His close friend Douglas Jackson obtained methamphetamine from suppliers in Nevada and California. Tulk regularly participated in distributing the drugs once they arrived in Iowa, and he also met Jackson in California at least six times to procure supplies. In 1993 Tulk and Jackson purchased real property in Missouri with part of their drug proceeds. Alan Cookson, another alleged member of the conspiracy, went to trial with Tulk.

Drug Enforcement Administration agents learned about Jackson's dealings from confidential sources and arrested him in February 1995 and seized approximately three pounds of methamphetamine from his vehicle. They later learned that the drugs in his vehicle were part of a seven pound shipment from Las Vegas. Jackson began to cooperate with law enforcement officials and identified Tulk as one of the people he regularly supplied. He told them that two pounds of the Las Vegas shipment were slated for delivery to Tulk at the house of his stepfather, Burris Penney, who was also one of Tulk's distributors. Jackson testified at trial and provided most of the evidence about Tulk's role in the drug conspiracy, but other testimony also tied Tulk to some of the transactions.

After a nine day trial, the case against Tulk was submitted to the jury on four counts: conspiracy to distribute methamphetamine, cocaine, and marijuana; distributing marijuana; possession with intent to distribute methamphetamine, and money laundering. A single conspiracy count was submitted for Cookson. The jury acquitted Cookson and found Tulk not guilty of distribution of marijuana but convicted him on the other crimes charged. A separate forfeiture hearing was held, and the court ordered several pieces of real property forfeited as proceeds of illegal activity pursuant to 21 U.S.C. § 853(a)(1). Tulk was sentenced to 330 months on each of the drug convictions and 120 months for money laundering, all to run concurrently.

2

On appeal Tulk seeks dismissal of the indictment for prosecutorial misconduct before the grand jury or a new trial because of prosecutorial misconduct at trial and erroneous jury instructions.

Tulk asserts that statements made by the prosecutor before the grand jury should lead to dismissal of the indictment. He argues that the prosecutor answered questions of grand jurors and provided information not otherwise made available to them based on his interviews with Jackson and others. The prosecutor also stated that there had been money laundering. To obtain dismissal of an indictment, a defendant must generally show both flagrant misconduct and substantial prejudice. See United States v. Manthei, 979 F.2d 124, 126 (8th Cir. 1992). Since Tulk was later convicted by a petit jury which knew nothing about any possible misconduct before the grand jury, Tulk cannot show actual prejudice. Any injury sustained in the charging process is cured by a subsequent finding of guilt beyond a reasonable doubt. See United States v. Mechanik, 475 U.S. 66, 73 (1986); United States v. McKie, 831 F.2d 819, 821-22 (8th Cir. 1987).[2]

Tulk also argues that he is entitled to reversal of his conviction because of prosecutorial misconduct during trial. He complains about both the prosecutor's closing argument as well as some of the things he did during the evidentiary portion of the trial.

Tulk raises many points now in objecting to the prosecutor's closing. Among his complaints are references the prosecutor made to the "drug problem" and related violence. The prosecutor argued that Tulk was responsible for sending "large quantities of methamphetamine down the chain into our community" and that Tulk

---

[2]For similar reasons, Tulk is not entitled to dismissal because the prosecutor defended himself against the claim that he behaved improperly before the grand jury. Moreover, Tulk did not preserve this point in the district court by moving to strike the prosecutor's Resistance to Motion to Dismiss or requesting that the prosecutor be disqualified.

had not "realized the wrong, grievous wrong that these drugs are doing to our community." He suggested that the jurors were called on "to look at the facts and arrive at the conclusion that there was no reasonable doubt that Mr. Tulk is guilty." Tulk argues that such comments were calculated to inflame passion and generalize the issues before the jury.[3]

A major problem with Tulk's argument about the prosecutor's closing argument and rebuttal is that he did not at the time raise any objection at all. Neither did he request any intervention by the district court or any limiting or curative instructions. Rather, he sat back and allowed the prosecutor to continue without interruption. If Tulk had objected, the district court could have exercised its discretion to limit the remarks or to tell the jury to disregard them. "A party may not stand idly by, watching the proceedings and allowing the Court to commit error of which he subsequently complains." United States v. Hoelscher, 914 F.2d 1527, 1543 (8th Cir. 1990) (quoting United States v. Nance, 502 F.2d 615, 621 (8th Cir. 1974) (citation omitted)).

Because of the failure to object, we review only for plain error. See Fed. R. Crim. P. 52(b); Johnson v. United States, 117 S. Ct. 1544, 1549 (1997); United States v. Olano, 507 U.S. 725, 733-34 (1993); United States v. Gibson, 123 F.3d 1121, 1123 (8th Cir. 1997). Tulk must therefore show that the "error was plain, meaning clear or obvious; and [that] the error affected [his] substantial rights, which requires a showing that the error was prejudicial and affected the trial's outcome." United States v. Johnson, 12 F.3d 827, 835 (8th Cir. 1994). Even clear errors will only matter if a miscarriage of justice would otherwise result that might seriously affect the fairness, integrity or public reputation of the judicial proceedings. See Olano, 507

---

[3]Appellant argues this situation is similar to that leading to reversal of one defendant's conviction in United States v. Millard, 139 F.3d 1200 (8th Cir. 1998), involving the same prosecutor. The reversal there was because there was insufficient evidence of Mrs. Millard's involvement. Id. at 1208. The situation here is distinguishable.

4

U.S. at 735 (noting discretionary language of plain error rule); <u>United States v. Millard</u>, 139 F.3d 1200, 1208 (8th Cir. 1998).

A prosecutor should not urge a jury to convict for reasons other than the evidence; arguments intended to inflame juror emotions or implying that the jury's decision could help solve a social problem are inappropriate. <u>See</u> <u>United States v. Johnson</u>, 968 F.2d 768, 770-71 (8th Cir. 1992). <u>See also</u> <u>United States v. Solivan</u>, 937 F.2d 1146, 1154-55 (6th Cir. 1991); <u>United States v. Monaghan</u>, 741 F.2d 1434, 1441 (D.C. Cir. 1984). Reversal for prosecutorial misconduct is not required unless it prejudicially affected an individual's substantial rights and deprived him of a fair trial. <u>See</u> <u>United States v. Benitez-Meraz</u>, 161 F.3d 1163, 1166 (8th Cir. 1998); <u>United States v. Hernandez</u>, 779 F.2d 456, 458 (8th Cir. 1985). Factors to consider in assessing prejudice include the cumulative effect of any misconduct, the strength of the properly admitted evidence, and any curative actions taken by the trial court. <u>See</u> <u>Benitez-Meraz</u>, 161 F.3d at 1166.

The prosecutor's argument in this case included appropriate references to the jury to "look at the facts" and apply the reasonable doubt standard in making its decisions, but to the extent it suggested the jury react to factors outside of the evidence it was inappropriate. Here, though, Tulk has not shown he was prejudiced. Much incriminating evidence was admitted against Tulk over the course of the nine day trial. The fact that the jury acquitted co-defendant Cookson and Tulk on one of the drug counts shows that it was not swayed by passion and was able to analyze the evidence presented against each defendant on each count.

Tulk also asserts that the prosecutor improperly bolstered the credibility of government witnesses by evidence about plea agreements.[4] Evidence showing the existence of a plea agreement, its terms, and a witness' understanding of the agreement is not improper, see Benitez-Meraz, 161 F.3d at 1167-68; United States v. Santana, 150 F.3d 860, 863 (8th Cir. 1998), and the prosecutor's questioning did not suggest that the government had independently verified the testimony or that acceptance of the agreement implied that the proposed testimony was accurate. See United States v. Magee, 19 F.3d 417, 421 (8th Cir. 1994). Tulk's argument that the government violated 18 U.S.C. § 201(c)(2) by its agreements is also without merit. See United States v. Johnson, 1999 WL 55234, at *5 (8th Cir. Feb. 8, 1999).

Tulk also complains that the prosecutor introduced a prior misdemeanor conviction for marijuana possession in support of the marijuana distribution and money laundering counts without giving proper notice under Fed. R. Evid. 404(b). Not only did defense counsel fail to object to the admission of this evidence, but he in fact helped prepare the exhibit supporting it and stipulated to its admission. He also used the prior conviction in his opening statement. We need not conduct plain error review here because Tulk deliberately waived his right to object. See Olano, 507 U.S. at 733 (waiver extinguishes error under 52(b)); United States v. Gutierrez, 130 F.3d 330, 332 (8th Cir. 1997).[5]

---

[4]Tulk argues that the district court erred by admitting an unredacted plea agreement in which a witness had stipulated to involvement with Jackson and Tulk in possessing and distributing methamphetamine. The court instructed the jury, however, that it could only consider the evidence of the plea for the purpose of judging that witness' credibility, not as evidence of a defendant's guilt.

[5]We have also reviewed other evidentiary complaints raised by Tulk and find they do not merit relief, either singly or in combination.

6

Tulk also claims that the district court committed reversible error in its instructions to the jury, but after reviewing the record we conclude that he has not shown that the court erred or abused its discretion in instructing the jury.

Tulk complains the court failed to instruct the jury that the testimony of witnesses testifying pursuant to plea bargains should be given "greater care and special caution." The court instead told the jury that the testimony of such witnesses "should be weighed with care," and that "[w]hether or not such a witness's testimony may have been influenced by the individual's desire to please the government or to strike a good bargain with the government about the witness's own situation is for you to determine." Tulk did not timely object but now argues that the district court should have issued a "greater care and special caution" instruction sua sponte. A defendant "is not entitled to a particularly worded instruction where the instructions given . . . correctly state the applicable law and adequately and fairly cover the substance of the requested instruction." United States v. Parker, 32 F.3d 395, 400 (8th Cir. 1994). Accord United States v. Reda, 765 F.2d 715, 719 (8th Cir. 1985). Furthermore, a defendant is not entitled to an instruction explicitly saying that the testimony of immunized witnesses should be considered with "greater care and special caution" when there has been corroboration of witness testimony. See United States v. Gibson, 105 F.3d 1229, 1233 (8th Cir. 1997). Such corroborating evidence may be circumstantial and need not be of great weight, taken alone. See United States v. Drews, 877 F.2d 10, 13 (8th Cir. 1989).

Tulk also asserts that the district court abused its discretion and violated his right to present a theory of defense by refusing to give an instruction concerning a witness who had admitted giving false testimony in his own trial. The record does not indicate that Tulk presented this request to the trial court as his theory of defense, and a specific instruction on testimony by a perjurer is not required where there are general instructions on witness credibility and impeachment and the defense had the opportunity to point out and argue the witness' prior false testimony. See United

States v. Wong, 886 F.2d 252, 257 (9th Cir. 1989); United States v. Burke, 495 F.2d 1226, 1235 (5th Cir. 1974).

The evidence at trial showed that Tulk was involved in a sophisticated drug distribution conspiracy, and he has not shown that he is entitled to dismissal of his indictment or reversible error in his trial.  We therefore affirm the judgment of the district court.


A true copy.


ATTEST:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.