# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1345

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Patricia Ann Foreman, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 24, 2009
Filed: December 16, 2009

_____

Before MELLOY, GRUENDER and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

In September 2008, a jury found Patricia Foreman guilty of one count of social security benefits fraud, in violation of 42 U.S.C. § 1383a(a)(3), and three counts of theft of government money, in violation of 18 U.S.C. § 641.  On appeal, Foreman seeks a new trial, arguing that the district court[1] committed reversible error by admitting two documents as business records under Federal Rule of Evidence 803(6)

_____

[1]The Honorable Fernando J. Gaitan, Jr., Chief Judge, United States District Court for the Western District of Missouri.

and that the Government engaged in prosecutorial misconduct by asking her improper questions on cross-examination. For the following reasons, we affirm.

## I.  BACKGROUND

In June 2008, Foreman was charged with one count of social security benefits fraud and three counts of theft of government money. Count I charged Foreman with social security benefits fraud arising from her fraudulent application for federal supplemental security income ("SSI") benefits. Counts II through IV charged Foreman with theft of SSI benefits, federal Section 8 housing benefits, and federally funded food stamp benefits.

Before trial, the Government announced its intention to introduce certain documents. Foreman filed a motion in limine objecting to the admission of two of the documents: a loan application that Ringling Dan Cohn submitted to Commerce Bank on July 29, 2004 ("the loan application") and a letter from Griffith Coombs to the Vice President of Country Club Trust Company, dated April 22, 2004 ("the letter"). The loan application stated that Cohn lived at the same address as Foreman from 1998 to 2004. It also stated that Cohn was employed by Yellow Cab from June 1996 to April 2004 and that he earned $3,800 a month during that time. In the letter, Coombs directed Country Club Trust to issue a check for $11,000 "to Dan Cohn's wife, Patricia Foreman," from Coombs's account.[2]

---

[2]There was evidence at trial that Cohn befriended Coombs and obtained power of attorney and signature authority over Coombs's bank accounts. Cohn subsequently pled guilty to four counts of bank fraud in connection with his fraudulent access to Coombs's bank accounts. Amended Judgment and Commitment as to Ringling Dan Cohn, at 1, *United States v. Cohn*, No. 4:07-cr-93-ODS-1 (W.D. Mo. Oct. 8, 2008).

Foreman argued that the loan application and the letter were inadmissible under Rule 803(6), the business records exception to the hearsay rule. Foreman also argued that admitting these documents would violate her Confrontation Clause rights. The district court denied Foreman's motion to exclude the documents, and the case proceeded to trial.

At trial, the Government elicited testimony from representatives of the Social Security Administration, the Department of Housing and Urban Development, and the Missouri branch of the federally funded food stamp program. These witnesses described the eligibility requirements for the SSI, Section 8, and food stamp programs, as well as the specific benefits Foreman received. Each program required Foreman to report her income and assets and the names, income, and assets of any persons who lived with her. The applications for the programs warned that participants had a continuing duty to report any changes in their status and that failing to accurately report any information could result in criminal prosecution. Foreman signed documents for all three programs acknowledging the warnings and certifying that she provided truthful information. At no time did Foreman report any income or assets other than social security benefits and food stamp certificates she had received, and she never listed Cohn as a person who lived with her. Foreman received more than $35,000 in Section 8 benefits from October 1998 to August 2004; $3,759 in food stamp benefits from approximately 2000 to 2005, and $3,093 in SSI benefits for the period between March 2001 and March 2006.

The Government presented evidence establishing that Foreman did, in fact, receive income and possess assets during the periods when she received federal benefits. Between December 2003 and January 2005, Cohn and Coombs wrote checks to Foreman that totaled $27,900. Bank records showed that the checks were signed by "Patricia Foreman" and cashed. From January 2003 to September 2005, Foreman accumulated $30,000 in gambling winnings and lost $86,000 at four different casinos. In January 2005, Cohn and Foreman went to a dealership to purchase a vehicle for

Foreman. Foreman paid the salesperson $35,199 in cash. Foreman never reported any of these events.[3]

During the Government's cross-examination of Foreman, the prosecutor identified inconsistencies between Foreman's testimony and the testimony of other witnesses, asking Foreman on four occasions whether specific witnesses whose testimony was inconsistent with Foreman's must be "mistaken or lying." Foreman did not object to the questions. At the end of her cross-examination, Foreman admitted that she no longer received SSI, Section 8, and food stamp benefits. The prosecutor then asked, "And because you have lost all those benefits, you now figure that you have nothing left to lose by going to trial[?]" Foreman objected, and the court sustained the objection. The jury found Foreman guilty of all four counts, and the district court sentenced her to a term of 12 months and 1 day in prison.

## II.  DISCUSSION

First, we consider Foreman's argument that the district court erred in admitting the loan application and the letter into evidence as business records under Rule 803(6). Foreman argues that the loan application does not qualify as a business record under Rule 803(6) because it was "made" by Cohn, not Commerce Bank. She similarly asserts that Coombs, not Country Club Trust, "made" the letter.[4] Because these documents do not qualify as business records under Rule 803(6), Foreman argues that

---

[3] Foreman does not dispute that the money she received and used during these events constitutes income or assets.

[4] Foreman also challenges the testimony of several witnesses concerning the loan application and the letter, claiming that they were not custodians of the records and that no records custodians testified at trial. However, Rule 803(6) provides that a court may admit into evidence a document that qualifies as a business record without testimony from the custodian of records if the court receives a written certification from the custodian that complies with Rule 902(11). The Government provided Rule 902(11) certifications, and Foreman does not challenge the certifications.

the documents contain testimonial statements and that their admission without an opportunity to cross-examine the persons who made the statements violates the Confrontation Clause of the Sixth Amendment. *See Crawford v. Washington*, 541 U.S. 36, 58 (2004).[5]

The Government contends that Foreman failed to preserve the Rule 803(6) argument for appeal because she did not specifically identify in her pretrial motion or at trial the reasons the documents were inadmissible under Rule 803(6). We disagree. To preserve an evidentiary issue for review, a party must make a timely objection "clearly stating the grounds for the objection." *United States v. Thornberg*, 844 F.2d 573, 575 (8th Cir. 1988). Foreman clearly stated the grounds for her objection to the admissibility of these documents. In her pretrial motion, Foreman argued that admitting the documents would violate her "Right to Confront Witnesses against her, and . . . the hearsay rules of [the] Federal Rules of Evidence." She also stated that the documents must "be admissible under [Rule] 803(6)." At trial, Foreman renewed her objections. Accordingly, Foreman preserved this issue for appeal.

We generally review a district court's evidentiary rulings for abuse of discretion. *United States v. Gustafson*, 528 F.3d 587, 590 (8th Cir. 2008). However, if the ruling results in constitutional error, we must reverse unless the Government shows that the error was harmless beyond a reasonable doubt. *See United States v. Mendoza-Mesa*, 421 F.3d 671, 672 (8th Cir. 2005).

We need not decide here whether the district court erred in admitting the loan application and the letter. Even if we assume that the district court erred in admitting the documents and that these errors created a constitutional violation, we hold that the

---

[5]Business records under Rule 803(6) are nontestimonial, *Crawford*, 541 U.S. at 56, and the Confrontation Clause does not apply to nontestimonial statements, *Whorton v. Bockting*, 549 U.S. 406, 420 (2007). Thus, if the documents qualified as business records under Rule 803(6), there would be no constitutional violation.

alleged errors were harmless beyond a reasonable doubt. *See United States v. Copley*, 938 F.2d 107, 110 (8th Cir. 1991) ("[V]iolations of the confrontation clause caused by improper admission of hearsay statements are harmless beyond a reasonable doubt when there is overwhelming evidence of a defendant's guilt.").

Foreman argues that the admission of the loan application and the letter cannot be considered harmless, much less harmless beyond a reasonable doubt, because the documents were essential to the Government's case. We disagree. In order to prove that Foreman committed social security benefits fraud, the Government needed to prove that she had "knowledge of the occurrence of an event affecting [her] initial or continued right to [SSI] benefit[s]" and that she "conceal[ed] or fail[ed] to disclose such event with an intent fraudulently to secure such benefit[s]." *See* 42 U.S.C. § 1383a(a)(3). The charge of theft of government money required the Government to prove that Foreman stole, "purloin[ed], or knowingly convert[ed] to [her] use" any "money, or thing of value of the United States or of any department or agency thereof." *See* 18 U.S.C. § 641. The loan application showed that Foreman and Cohn lived together from 1998 to 2004 and that Cohn earned $3,800 a month from Yellow Cab during that period. The letter showed that Coombs directed Country Club Trust to issue an $11,000 check to Foreman and that Foreman and Cohn held each other out to be husband and wife. This evidence, while no doubt helpful to the Government's case, was not essential to it. As shown below, evidence of Foreman's knowing and intentional failure to report the other income and assets she obtained while receiving federal benefits proved her guilt beyond a reasonable doubt.

The unchallenged evidence showed that Foreman signed documents certifying that she knew that the SSI, Section 8, and food stamp benefit programs required her to report all income and assets that she obtained. Foreman obtained federal benefits from 1998 to 2005. During that time, Foreman received $27,900 in checks from Cohn and Coombs, which were cashed. In fact, the $11,000 check that Coombs directed Country Club Trust to issue to Foreman in the letter was admitted into evidence. In addition, the Government proved that Foreman won $30,000 and lost $86,000 at four

casinos. The Social Security Administration specifically notified Foreman on two occasions that she was required to report her gambling activity, but she failed to do so. Cohn and Foreman also purchased a car with $35,199 in cash, which Foreman handed to the salesperson at the time of the sale. Foreman never reported any of these events. Given the evidence of Foreman's possession of unreported income and assets during the time she received federal benefits, independent of the loan application and the letter, any error in admitting the disputed documents was harmless beyond a reasonable doubt.

Next, we consider Foreman's argument that the Government's questions during her cross-examination constituted prosecutorial misconduct that violated her due process rights. Foreman claims that the prosecutor improperly commented on her decision to invoke her constitutional right to go to trial by asking, "And because you have lost all those benefits, you now figure that you have nothing left to lose by going to trial[?]". According to Foreman, this question, coupled with the Government's "mistaken or lying" questions, requires reversal.

Foreman concedes that she did not preserve her challenge to either allegation of prosecutorial misconduct.[6] This court reviews unpreserved allegations of prosecutorial misconduct for plain error. *United States v. McClellon*, 578 F.3d 846, 859 (8th Cir. 2009). Foreman has the burden of showing that there was an error, that the error was plain, and that the error affected her substantial rights, "which requires a showing that the error was prejudicial and affected the trial's outcome." *See id.* (quoting *United States v. Tulk*, 171 F.3d 596, 599 (8th Cir. 1999)). "Factors to consider in assessing prejudice include the cumulative effect of any misconduct, the

_____

[6] Although Foreman objected to the prosecutor's question regarding her reason for going to trial, the district court sustained her objection to the question and Foreman did not request any further relief. *See United States v. Bolden*, 545 F.3d 609, 629 (8th Cir. 2008) (finding that an issue was not preserved for appellate review where the district court sustained the objection and granted the relief requested), *petition for cert. filed*, --- U.S.L.W. --- (U.S. July 31, 2009) (No. 09-5694).

strength of the properly admitted evidence, and any curative actions taken by the trial court." *Id.* (quoting *Tulk*, 171 F.3d at 599).  If all three conditions are met, we will use our discretion to correct the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Mullins*, 446 F.3d 750, 758 (8th Cir. 2006).

Even assuming, without deciding, that the Government's questions were plainly improper, the errors were not so prejudicial as to affect the outcome of the trial.  First, the cumulative effect of the questions was minimal.  The prosecutor asked Foreman about her reason for going to trial only once.  Similarly, the prosecutor asked "mistaken or lying" questions only four times, and in each instance the Government had already established that Foreman's account of events conflicted with the testimony of the other witnesses. *See United States v. Sullivan*, 85 F.3d 743, 750 (1st Cir. 1996) ("Pointing out the obvious most likely scored the government, at most, rhetorical points.  We cannot say that these few largely rhetorical questions . . . affected at all the outcome of the trial.").  Additionally, the Government did not return to these topics during closing argument.  Second, as established above, the evidence of Foreman's guilt was overwhelming.  Third, when Foreman objected to the prosecutor's question regarding her reason for going to trial, the district court took immediate curative action.  The district court did not take any curative action with respect to the "mistaken or lying" questions because Foreman did not object to them. We conclude that these questions did not affect the outcome of the trial.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____